**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| STEPHEN W. SCHURMAN | CIVIL ACTION NO. 03-1467 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| PANOLA-HARRISON ELECTRIC COOPERATIVE, INC. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a "Motion to Exclude the Testimony of Plaintiff's Proposed Expert, John Loud" (Record Document 35) filed by Defendant Panola-Harrison Electric Cooperative, Inc. ("Panola-Harrison"). In its motion, Panola-Harrison seeks to exclude the testimony of Plaintiff Stephen W. Schurman's ("Schurman") expert, John Loud ("Loud"), on the grounds that he is not qualified to render expert opinions in this case, that his methods and opinions are unreliable, that many of his opinions are not relevant, and that some of his opinions in his expert report are inconsistent with his deposition testimony. See id. at 2. Schurman opposes the motion. See Record Document 39.

The admissibility of Loud's expert testimony is governed by Federal Rule of Evidence 702[1] and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct.

---

[1]F.R.E. 702 states:

If scientific, technical, or otherwise specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

2786 (1993). The function of this Court under Rule 702 and Daubert, and its progeny, is to serve as a gatekeeper and to ensure that any and all scientific testimony is not only relevant, but reliable. See Daubert, 509 U.S. 579, 113 S.Ct. 2786. Again, this gatekeeping function applies to not only scientific expert testimony, but rather all expert testimony. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174 (U.S. 1999). Under Rule 702, the Court is concerned with three main requirements: (1) qualifications; (2) reliability; and (3) relevance. As to qualifications, the Court has reviewed the parties' briefs, Loud's deposition, and Loud's Electrical Incident Investigation Report and finds that Loud is qualified to testify in the field of electrical engineering and, particularly, on the given subject of this case – identifying factors that caused or contributed to the incident involving Schurman and assessing whether the location of the electrical line was in violation of generally accepted engineering standards or utility industry standards. See Verzwyvelt v. St. Paul Fire & Marine Ins. Co., 175 F.Supp.2d 881, 887 (W.D. La. 2001) & Wilson v. Woods, 163 F.3d. 935, 937 (5th Cir. 1999). The record reflects that Loud earned a B.S. in Electronics Engineering Technology from Devry Institute of Technology in 1992 and received his M.S. in Electrical Engineering from San Jose State in 1995. See Record Document 35, Exhibit 2, Appendix A at 29. Further, Loud's curriculum vitae represents, and this Court has no reason to question, that he has done work involving "electrocution: investigate the cause of death and document the site." See id., Exhibit 2, Appendix A at 30.

In determining reliability, this Court is charged with examining the process or technique used by Loud in formulating his opinion and determining whether that process

or technique is reliable.[2] Much of Panola-Harrison's focus on the reliability prong seems to revolve around Loud's deposition testimony involving the applicable rules of the National Electric Safety Code ("NESC") and the interpretation of relevant standards pertaining to practices of inspections and patrol of electrical distribution equipment. See id. at 8-18. There is no dispute that the NESC standards are subject to peer review and are nationally recognized standards in the utility industry; thus, Loud's use and dependence on the NESC standards meets the necessary reliability factor. See Daubert, 509 U.S. at 593-594, 113 S.Ct. at 2797 (citing whether the theory has been subjected to peer review and publication and the degree to which the technique or theory has been generally accepted in the scientific community as factors relevant to the determination of reliability). It is true that in his deposition, Loud refers to numerous older editions of the NESC but cannot pinpoint which edition is specifically applicable to this case. However, the Court believes that Loud's opinion as to the various NESC editions is somewhat of a historical perspective to show not only the evolution of the NESC, but also that the NESC has historically suggested a minimum clearance between power lines and structures. Further, while the Court notes that Loud's deposition testimony leads one to believe that Loud believes the Louisiana Public Service Commission has adopted the NESC, such a misstatement does not warrant the wholesale exclusion of his expert testimony.[3]

---

[2] The Court notes that Loud's expert report reflects that he inspected that site of the incident and conducted an industry standard compliance investigation. See Record Document 39, Exhibit A.

[3] In a sworn affidavit, Lawrence C. St. Blanc, Secretary of the Louisiana Public Service Commission, stated that "the Louisiana Public Service Commission has never issued any rules, regulations, or orders whereby it formally adopted any edition of the National Electric Safety Code (NESC) nor any of the provisions therein. However, the

Panola-Harrison also argues that Loud's interpretation of relevant standards pertaining to practices of inspections and patrol of electrical distribution equipment is also unreliable and therefore inadmissible. See Record Document 35 at 16. The Court notes that the reliability of this portion of Loud's expert testimony is a close call. Loud cites NESC 214A2 in his report as setting forth an appropriate standard of care for utility companies with regard to inspections for their lines and equipment. See id., Exhibit 2 at 20. NESC 214A2 states:

> Lines and equipment shall be inspected at such intervals as experiences has shown to be necessary.

In his deposition, Loud agrees that "experiences" as stated in NESC 214A2 refers to the experience of the utility. See id., Exhibit 1 at 64-65. Yet, according to Panola-Harrison, Loud did not obtain any records from Panola-Harrison which might be relevant to determining the "experience" of Panola-Harrison as it relates to line and equipment inspection. See id. at 16. Further, in opining that Panola-Harrison's inspection and maintenance programs were inadequate, Loud seems to rely on the United States Department of Agriculture's Rural Utility Service ("RUS") rating guidelines. See id., Exhibit 1 at 64-65. However, in a previous Memorandum Order, this Court has excluded reference to the RUS guidelines at trial. Thus, as stated previously, Loud's expert testimony regarding his interpretation of relevant standards pertaining to practices of inspections and patrol of distribution equipment is a close call and such testimony at trial will proceed very

---

Commission does recognize its existence and does not dispute its validity." See Record Document 35, Exhibit 4. Thus, in light of this evidence, Loud will be *excluded* from testifying at trial that Louisiana utility companies are required to operate under the NESC.

slowly so that the Court will remain free to monitor the reliability of such expert testimony. Counsel for Panola-Harrison is of course free to make timely objections to this phase of Loud's trial testimony.

As to relevance, the Court finds that Loud's testimony is sufficiently tied to the facts of this case and that it will aid the jury in understanding and resolving the factual disputes in this case, such as determining the applicable duty/standard of care in this case. See Daubert, 509 U.S. at 591, 113 S.Ct. at 2796 (1993). Simply put, Loud's testimony regarding causation and NESC standards is relevant to the issue of Panola-Harrison's alleged negligent conduct.

In conclusion, the Court finds that Panola-Harrison has failed to demonstrate that the "factual basis, data, principles, methods, or their application" underlying Loud's proposed testimony has been "called sufficiently into question" under Rule 702. Kumho Tire Co., Ltd., 526 U.S. at 149, 119 S.Ct. at 1175. Instead, the Court finds that Loud's testimony, as a whole, has a sufficiently reliable basis in the knowledge and experience of relevant discipline. See id. Loud's expert testimony will be subjected to vigorous cross-examination and, presumably, the presentation of contrary evidence. See Daubert, 509 U.S. at 596, 113 S.Ct. at 2798 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment . . . ."). Thus, the Court concludes that Loud's

qualifications and the reliability and relevance of his proposed expert testimony stand on the showing made in the record.

Accordingly,

**IT IS ORDERED** that the "Motion to Exclude the Testimony of Plaintiff's Proposed Expert, John Loud" (Record Document 35) filed by Defendant Panola-Harrison Electric Cooperative, Inc. be and is hereby **DENIED**.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 6th day of June, 2006.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE