UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| STEPHEN W. SCHURMAN | CIVIL ACTION NO. 03-1467 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| PANOLA-HARRISON ELECTRIC COOPERATIVE, INC. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant Panola-Harrison Electric Cooperative, Inc.'s Post-Trial Rule 50(b) Motion for Judgment as a Matter of Law. See Record Document 73. Plaintiff Stephen W. Schurman opposes the Rule 50(b) motion. See Record Document 75. Based on the following, Defendant Panola-Harrison Electric Cooperative, Inc.'s Post-Trial Rule 50(b) Motion for Judgment as a Matter of Law (Record Document 73) is **GRANTED IN PART** and **DENIED IN PART**.

**I.     BACKGROUND.**

On May 27, 2003, Plaintiff Stephen W. Schurman ("Plaintiff") was injured when he came into contact with an uninsulated 7200 volt electric power line. At the time of the accident, Plaintiff was working at an oil/gas well site operated by Schurman Oil & Gas in DeSoto Parish, Louisiana. He was at the site to kill the well so that it could be re-worked. The well had been shut in for several years and he needed to blow off the built up pressure. When Plaintiff opened the valves to blow off the pressure, he observed a pipefitting leaking at the top of an adjacent metal storage tank, which was approximately eighteen feet tall. He closed the valves and was going to repair the pipefitting. Eventually, he decided that he needed to climb on top of the tank to complete the project. While on top of the tank, Plaintiff's head made contact with the uninsulated 7200 volt electric power

line. The electric power line in question was owned, operated and maintained by Defendant Panola-Harrison Electric Cooperative, Inc. ("Defendant").

The case came on for jury trial on June 12-16, 2006. The jury assigned 60% fault to Defendant, 40% fault to Plaintiff, and 0% fault to George Schurman, d/b/a Schurman Oil & Gas. See Record Document 68. The jury awarded Plaintiff the following damages: $1,000,000 for pain and suffering, scarring and disfigurement, emotional anguish and distress; $188,000 for impairment of future earning capacity; $225,000 for past lost compensation; and $99,000 for past medical expenses. See id.

On July 6, 2006, Defendant filed the instant Post-Trial Rule 50(b) Motion for Judgment as a Matter of Law. See Record Document 73. The Post-Trial Rule 50(b) Motion challenges the jury's allocation of fault and award for past lost compensation. See id. Plaintiff opposes the Post-Trial Rule 50(b) Motion for Judgment as a Matter of Law, arguing that the motion is not properly before the Court and, alternatively, that the jury's findings should not be disturbed. See Record Document 75.

**II.   RULE 50(B) STANDARD.**

Federal Rule of Civil Procedure 50(b) states, in pertinent part:

If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment - and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

(1) if a verdict was returned:

    (A) allow the judgment to stand,
    (B) order a new trial, or
    (C) direct entry of judgment as a matter of law; or . . .

Under Rule 50(b), the moving party is entitled to judgment as a matter of law only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position. See Logan v. Burgers Ozark Country Cured Hams Inc., 263 F.3d 447, 455 (5th Cir. 2001). The Court will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury. See id. Judgment as a matter of law is appropriate only if there is no legally sufficient evidentiary basis for a claim under the controlling law. See id. Moreover, this Court must view the evidence and inferences drawn therefrom in the non-moving party's favor. See id.

### III. ANALYSIS.

#### A. Procedural Issue.

Plaintiff argues that although Defendant moved under Rule 50(a) for judgment as a matter of law at the close of Plaintiff's evidence and at the close of all the evidence, the issues now being raised in the instant motion were not initially raised at trial and are thus not properly before the Court. See id. at 3. Plaintiff contends that merely moving for judgment as a matter of law is not sufficient to preserve any and all issues that could have been but were not raised. See id. Simply stated, Plaintiff claims that Defendant did not properly preserve its challenges under Rule 50 to the jury's failure to allocate fault to George Schurman, d/b/a Schurman Oil & Gas, and the jury's past lost compensation award.

Here, the Court finds controlling guidance in Logan v. Burgers Ozark Country Cured Hams Inc., 263 F.3d 447 (5th Cir. 2001). In Logan, the Fifth Circuit noted that in order for a moving party to preserve its right to file a Rule 50(b) motion, it must first request

judgment as a matter of law at the close of all evidence. See id. at 457. However, the Fifth Circuit has approached this procedural requisite with a liberal spirit and has often excused "technical noncompliance with Rule 50(b) where the motion was not perfectly timed with respect to the close of the evidence and the submission of the case to the jury." Id. The Logan court applied such "liberal spirit" and found that the moving party had "adequately preserved the issue of fraud damages in its motions for judgment as a matter of law before the case was submitted to the jury," where the moving party had moved under Rule 50 for dismissal of all counts of the allegation of the complaint at the close of the non-moving party's case. Id. The moving party in Logan then again renewed its Rule 50 motion at the close of all of the evidence. See id. The Rule 50 motion in Logan was made as to all questions of liability and "all forms of damages were inherent in [such] request." Id. The Fifth Circuit refused "to adopt an unduly burdensome view of Rule 50 that would require litigants to detail every aspect of a case where . . . a general, all encompassing statement will suffice." Id.

Likewise, the Fifth Circuit noted in Greenwood v. Societe Francaise De, 111 F.3d 1239 (5th Cir. 1997), that the aforementioned procedural requirement serves two purposes: "(1) to ensure that the trial court is invited to reexamine only the question raised by the motion for a direct verdict-whether the evidence is sufficient as a matter of law-and not to reexamine the facts properly found by the jury; and (2) to avoid making a trap of the judgment n.o.v. [now judgment as a matter of law] when the defendant's nonrenewal . . . is designed to avoid pointing out the defects in the plaintiff's proof, especially defects exposed by the defendant's case-in-chief, which the plaintiff might cure before the case is submitted to the jury." Id. at 1244, n. 6. The Greenwood court reasoned that the purposes

of the procedural requisite were met where the defendant objected to certain jury charges, stating that such objections "were sufficient approximation of a renewed motion for directed verdict to support their later motion for judgment notwithstanding the verdict." Id. at 1245.

Here, Defendant asserted its Rule 50 motion, arguing that there was insufficient evidence to impose liability upon Panola-Harrison under Louisiana law and requested that all the plaintiff's claims against Panola-Harrison be dismissed, not only at the close of Plaintiff's case but also at the close of all the evidence. At the close of all evidence, Defendant specifically stated that there were not only issues of liability, but also issues on quantum. The Court finds that Rule 50 motions made by Defendant during trial, arguing that there was no basis of liability on the part of Panola-Harrison, inherently encompassed the argument regarding allocation of fault and quantum as to past lost compensation. Further, both the issues of allocation of fault to George Schurman, d/b/a Schurman Oil & Gas, and damages for past lost compensation were argued by counsel for both parties at the charge conference on June 15, 2006. Accordingly, under the rationale of Logan and Greenwood, the Court finds that the instant Rule 50(b) motion is properly before the Court.[1]

---

[1] If this Court were to assume that Defendant did not properly preserve its challenges to allocation of fault and the past lost compensation damages award, then a "plain error" standard of review would be applicable to the instant Rule 50(b) motion. Under the "plain error" standard, "the question before this Court is not whether there was substantial evidence to support the jury verdict, but whether there was any evidence to support the jury verdict." U.S. for use of Wallace v. Flintco Inc., 143 F.3d 955, 964 (5th Cir. 1998). "If any evidence supports the jury verdict, the verdict will be upheld." Id.

As to Defendant's challenge of the jury's failure to allocate fault to George Schurman, the Court need not consider the plain error analysis because, as set forth more fully in Section III(B), the Rule 50(b) motion on this ground fails, even under the more forgiving reasonableness standard. Moreover, as discussed more fully in Section III(C) of the instant Memorandum Ruling, the Court finds that Defendant's challenge to the jury's past lost compensation damages award succeeds even under the plain error standard, as there was simply no evidence to support the jury's excessive $225,000.00 award for past

B.   **Allocation of Fault.**

Defendant contends that "no reasonable, fairminded, and impartial jury could assess George Schurman d/b/a Schurman Oil & Gas, with zero percent of the fault, even with all reasonable inferences, given the overwhelming evidence of his negligent actions which clearly contributed to [Plaintiff's] accident."  Record Document 73 at 8.  In support of its argument that the Court should reallocate the fault for Plaintiff's accident to include the fault of George Schurman, d/b/a Schurman Oil & Gas, Defendant argues that the evidence in this case "absolutely established that George Schurman d/b/a Schurman Oil & Gas owed various duties to [Plaintiff] that were not complied with and which, had they been complied with, would have prevented – or at least lessened the severity of – the [P]laintiff's accident."  Id. at 3.  Specifically, Defendant points to certain United States Department of Labor Occupational Safety and Health Organization ("OSHA") regulations and Louisiana jurisprudence regarding an employer's obligation to provide a safe working environment and to provide safety equipment to employees.[2]  See id.  Defendant also cites the Louisiana Overhead Power Line Safety Act, La. R.S. 45:142 and 143.  See id. at 6-7.  Defendant places great emphasis on the fact that both experts testified that OSHA was applicable to this case and that both experts agreed that OSHA was not complied with by George Schurman, d/b/a Schurman Oil & Gas.  See id. at 4.  Moreover, Defendant contends that George Schurman confirmed his non-compliance with OSHA.  See id. at 5.

---

lost compensation because only the 2001 and 2002 Schedule Es were in evidence, as the Plaintiff's 2003, 2004, and 2005 1099s were excluded from evidence.

[2]See OSHA Regulation 84 Statute 1593/Public Law 91-596, § 5(a)(1) and (2); Wilson v. Aetna Casualty and Surety Co., 401 So.2d 500, 503-504 (La.App. 2 Cir. 1981); and 29 C.F.R. § 1910.333.

Defendant further believes that "the jury was obviously swayed by George Schurman's trials and tribulations in the 1980s and his alleged lack of knowledge of the condition which caused his son's injuries." Id. at 8.

Here, the Court finds that there was a sufficient evidentiary basis for the jury's decision to allocate no fault to George Schurman, d/b/a Schurman Oil & Gas. The Court properly instructed the jury on the allocation of fault. Jury Instruction Number 17 stated:

> Various regulations and statutes and case law establish particular requirements or duties imposed on persons performing work around energized power lines and upon providers of electricity. Copies of those regulations and statutes will be made available for your review and consideration during your deliberations. These duties, imposed by law, should be used by you in evaluating the question of legal fault on the part of the parties and non-parties to this lawsuit. You are to evaluate the fault of Panola-Harrison, Stephen Schurman, and George Schurman, d/b/a Schurman Oil & Gas. As outlined in the following jury instruction, you are instructed to apportion the fault, if any, among those three.

Record Document 66, Jury Instruction Number 17. Jury Instruction Number 18 stated, in pertinent part:

> Louisiana law requires that you divide the total responsibility for this accident among all those who were involved in it, including both parties and non-parties to this lawsuit. You should do this by assigning percentages of fault or negligence to the various involved persons and/or entities which will total 100%. You are free to assign whatever percentage of fault you feel appropriate.

Id., Jury Instruction Number 1. Under these instructions, the jury evaluated the fault of Defendant, Plaintiff, and George Schurman, d/b/a Schurman Oil & Gas. And from the evidence adduced at trial, the jury could have reasonably inferred that Schurman Oil & Gas was a father/son unincorporated business entity[3] and could have believed that any fault

---

[3]In its Rule 50(b) Motion, Defendant maintains that this Court resolved the issue of whether Plaintiff was an employee of Schurman Oil & Gas by "finding that [Plaintiff] was

on the part of George Schurman, d/b/a Schurman Oil & Gas, was subsumed by their 40% fault allocation to Plaintiff. Accordingly, Defendant is not entitled to judgment as a matter of law because there was evidence presented that allowed a reasonable inference to be drawn that supports the jury's fault allocation in this case. See Logan, 263 F.3d at 455. Under these circumstances, the Court will not challenge the factual conclusions of the jury. See id. Defendant's Rule 50(b) Motion is **denied** in regards to the jury's fault allocation.

### C. Past Lost Compensation.

The jury awarded Plaintiff $225,000.00 for past lost compensation. See Record Document 68 at 3. Defendants argues that such award should be set aside because Plaintiff did not meet his burden of proving his past lost compensation. Specifically, Defendant contends that there is a complete absence of evidence and testimony to establish, even with all reasonable inferences in his favor, that Plaintiff lost some specific amount of compensation due to his injury. See Record Document 73 at 12. Defendant admits Plaintiff attempted to demonstrate by how much his royalty income decreased from 2001 and 2002 (pre-accident) to 2003, 2004, and 2005 (post-accident) by comparing the Schedule Es from his tax returns in 2001 and 2002 with 1099s reporting his royalty income received in 2003, 2004, and 2005. See id. Yet, the Court excluded the 2003, 2004, and 2005 1099s from evidence because they were not disclosed to Defendant prior to trial and they were not listed as exhibits in the pre-trial order. Defendants maintain that this "lack

---

working for the Schurman Oil & Gas enterprise and under George Schurman's control." Record Document 73 at 6. In order for the record to be clear, this Court notes that it never held that Plaintiff was an employee of Schurman Oil & Gas; rather, the Court reasoned that because there was economic activity being conducted for compensation by Plaintiff in the Schurman Oil & Gas business enterprise, it was appropriate to consider George Schurman, d/b/a Schurman Oil & Gas, as a third party whose fault must be weighed.

of . . . evidence is fatal to [P]laintiff's claim for past lost compensation" because without the 1099s, "all that is left is [Plaintiff's] testimony, and that of his father's, that his royalties decreased and that his father had to hire others to do the work he used to do." Id. Yet, according to Defendant, Plaintiff failed to demonstrate how the additional expenses and/or his inability to service the wells impacted his royalty income. See id. Because Plaintiff did not demonstrate how much his royalty income went down, Defendant argues that the past lost compensation award was speculative. See id. at 12-13. Defendant contends that evidence of income from the two years preceding the accident coupled with Plaintiff's closing argument, which is not evidence, that his lost income was $135,000.00 did not meet Plaintiff's burden of proving past lost compensation with some mathematical calculation. See id. at 13.

Conversely, Plaintiff contends that under the plain error analysis[4] there is evidence to support the award of $225,000.00 in past lost compensation. See Record Document 75 at 16. Plaintiff points to not only his Schedule Es from his 2001 and 2002 tax returns, but also his and his father's testimony that as a result of Plaintiff's injuries and his inability to perform work, the oil and gas revenue essentially dried up. See id. 16, 17. He notes that he received gross oil and gas royalties of $76,738.00 in 2001 and of $59,927.00 in 2002. Thus, according to Plaintiff, "it is abundantly clear that the jury awarded [Plaintiff] $75,000 per year in lost oil and gas royalty revenue as a result of the injuries he received in the accident and his inability to perform work to earn his royalty payments." Id. at 17. Plaintiff also argued that his claim for past lost compensation is akin to a claim by a

---

[4]See supra note 1.

business for lost profits and that if profits are interrupted due to the fault of another, it is entirely appropriate for the jury to project the profits forward for the purposes of calculating lost profits. See id. at 17. Plaintiff maintains that the jury in this case simply projected the past lost compensation award by "choosing to accept the testimony of Plaintiff and George R. Schurman." Id. Plaintiff cites no case law in support of his position.

Under Louisiana law, the plaintiff bears the burden of proving past lost earnings and the length of time missed from work due to the accident. See Eppinette v. City of Monroe, 29,366 (La.App. 2 Cir. 6/20/97), 698 So.2d 658, 672. "Past lost earnings are susceptible of mathematical calculation from proof offered at trial." Id. Specifically, the plaintiff "must prove that he would have been earning wages but for the accident in question." Boyette v. United Services Auto. Ass'n, 2000-1918 (La. April 3, 2001), 783 So.2d 1276, 1279 (citations omitted); see also Misewicz v. Gamso, 2003-1052 (La.App. 4 Cir. 10/22/03), 860 So.2d 119, 123 (citations omitted). Further, an award for past lost wages "is not subject to the much discretion rule." Misewicz, 860 So.2d at 123 (citations omitted). The same rationale also applies to claims for past lost profits. See Vizinat v. Transcontinental Gas Pipeline Corp., 552 So.2d 1237, 1239 (La.App. 3 Cir. 1989) ("On the other hand, in a suit for damages, it is the plaintiff's burden to prove the damage he suffered as a result of defendant's fault, and to support an award there must be evidence in the record. Damages in the nature of lost profits resulting from an offense or quasi-offense must be proved with reasonable certainty. Damages will not be allowed where the lost profits are purely conjectural.").

Under the aforementioned jurisprudence, it was Plaintiff's, not Defendant's, burden to offer evidence that his royalty income decreased and by how much. The Plaintiff's

evidence at trial did not meet that burden insofar as the jury's award of $225,000.00 for past lost compensation is simply not reasonable. Viewing the evidence and inferences drawn therefrom in Plaintiff's favor, the only evidence to be considered is the Schedule Es and the testimony of Plaintiff and his father, which this Court will accept as evidence of how Plaintiff's royalty income decreased after the accident. See Logan, 263 F.3d at 455. The Schedule Es show gross royalties of $76,738 (2001) and $59,927 (2002). Even this evidence is insufficient to establish an award for past lost compensation of $75,000 per year for three years because both Schedule Es show expenses incurred in obtaining that income of $26,837 and $17,963, respectively, and Plaintiff is entitled to past lost compensation, not the gross royalty.

While the Court does agree that Plaintiff cannot support the jury's past lost compensation award of $225,000.00, the Court believes Plaintiff has proven, with sufficient specificity, he suffered a loss of compensation that was not simply "purely conjectural." Considering the 2001 and 2002 Schedule Es and the testimony of both Plaintiff and his father, Plaintiff has succeeded in proving past lost compensation that is susceptible of mathematical calculation, just not the $225,000.00 awarded by the jury. Accordingly, Defendant's Rule 50(b) Motion is **granted** in regards to the jury's past lost compensation award and the Court finds it appropriate to reduce the past lost compensation award to $138,000.00. This amount was reached after reviewing the 2001 and 2002 Schedule Es, subtracting the expenses incurred in obtaining the royalty income, and then calculating Plaintiff's average royalty income during 2001 and 2002.

**IV. CONCLUSION.**

Based on the foregoing, Defendant's Post-Trial Rule 50(b) Motion for Judgment as a Matter of Law (Record Document 73) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **DENIED** in regards to the jury's fault allocation and **GRANTED** in regards to the jury's past lost compensation award. The past lost compensation award is reduced to $138,000.00. The Court will issue an amended judgment reflecting the reduction of the past lost compensation award.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 12th day of January, 2007.

*[signature]*
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE